## Walker v. Watson's Admr.

(Decided January 29, 1913.)

### Appeal from Elliott Circuit Court.

Estates—Identity of Claimants—Question of Identity—Relationship—
    Evidence.—The question of the identity of appellant, and his
    relationship to the intestate, is one of fact and evi-
    dence examined and held that appellant established the
    relationship between himself and the intestate, as claimed in his
    pleadings, and the judgment against him is reversed with direc-
    tions to so adjudge the relationship; but as there may be other heirs
    at law of the intestate, before there is a final disposition of the
    case, the other heirs, if any, should be brought before the court.
    (See Burgess, et al. v. Walker, et al., 145 Ky., 559.)

    JOHN M. WAUGH and JOHN G. MORRIS, for appellant
    JNO. A. GRAY, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In December, 1909, a negro man by the name of Richard or Dick Watson, died in Elliott County, Kentucky, intestate, aged about seventy years. He had never married and lived alone. He had accumulated some three hundred acres of valuable land, which he left at his death, together with several hundred dollars in personal property. An administrator was duly appointed and instituted this action to settle his estate. Two sets of claimants appeared in the action and filed pleadings claiming to be heirs at law of Watson. The appellant, Jesse Walker, claiming to be his only brother, and the other party, Burgess and others, claiming to be his brothers and sisters, or their heirs.

The lower court by its judgment found that neither set of claimants had by preponderance of evidence established their claims, and entered a judgment against both, Burgess and others appealed from that judgment and the same was affirmed by this court as to them (Burgess, et al. v. Walker, et al., 145 Ky., 559); but the court in the opinion expressly left open the question whether appellant, Walker, had established his claim.

Appellant asserts that the proper name of Richard Watson was Richard Walker, and that he and Richard Walker were each the children of Jesse and Eliza Walker, who were slaves owned by John Walker, who lived at the mouth of Mill Creek on Troublesome Creek, now in Knott County, Kentucky. It was asserted by the other set of claimants that Richard Watson's proper name was Richard Wallace, and that he was the son of Mariah Wallace of Lawrence County, Kentucky; it not being claimed that there was any relationship between the Wallace claimants and the Walker claimant.

The claim of the Wallace's having been disposed of, it only remains to be seen whether appellant, Jesse Walker, has established his relationship to Richard Watson. Appellant testified that he was born in 1844 or 1845 on Troublesome Creek, and that he was then owned by John Walker, a white man who lived at that place, and that he was the son of Jesse and Eliza Walker, who were owned by John Walker, and that he had three brothers, Dick, Bill and John and four sisters, Susie, Milla, Crecie and Adeline, all owned by John Walker; he says about the year 1860, he (appellant) was given by John Walker to his son Aleck Walker, who took him to Carter County, where he has ever since lived; that he

was small when his brother Richard was sold about 1848 or 1849, and taken away, that his mother, brothers and sisters were all sold and taken away at the same time, except himself and his brother Bill, and that being small he did not remember who had bought him; that he had never seen his mother but once since, which was about five years before the giving of his deposition, having finally located her in Tennessee, and that his mother told him that either Fred Moore or Bob Bates had bought Dick, and that the last she heard of him, he was living with Rolla Watson in Elliott County, who had gotten him from Virginia. He says that Dick was the oldest child and that there were two girls between him and Dick.

John H. Flanery, an ex-superintendent of Schools of Elliot County, states that he knew Dick Watson, and while witness was running a store in Elliott County Dick frequently traded with him, and he talked to him and that Dick told him his right name was Walker, and that was the name of the man that formerly owned him.

Lewis E. Ferguson states that he is a resident of Elliott County and knew Dick Watson and was friendly with him, and was present when one of the Wallace negroes claimed to be his brother, and Dick said he had a brother, but that was not the man.

Andy Adkins states in substance the same thing, and in addition, that Dick told him he remembered being at Fred Moore's when he was a chunk of a boy, but did not remember what he said about how he came to be there.

Morge Baldridge states that he was seventy years old and was born and raised in Floyd County, and that he knew John Walker, who lived on Troublesome Creek, and was acquainted with the Walker family. That he knew the colored woman named Eliza that belonged to John Walker, and that she was the mother of three boys, Dick, Jesse and Will, and that she also had a girl; that Dick and the girl were sold and taken away, and that his recollection is, that Dick was the oldest boy. That about ten years previous to giving his deposition, he met Dick Watson in Grayson, Kentucky, which was the first time he had seen him since they were children, and that Dick told him that he lived on Newcomb Creek in Elliott County, that he was born a slave of John Walker on Troublesome Creek, and that he spoke

of this in the conversation, and that made the witness know that he was Dick Walker that he had known when he was a boy; that he wanted witness to go home with him, but he did not go; that he was present when Jesse Walker was given by John Walker to his son Aleck Walker; and that Alex thereafter brought Jesse to Carter County, and that the other brother Will was given to Jim Walker; that Jesse and Dick resembled each other, but that Dick was a little darker than Jesse and not quite so tall.

Lewis Higgins, colored, states that he knew John Walker, and that he knew Taller Dick Combs and his mother Alcey Combs; that Alcey had a boy named Jesse, but he was not the same man as Jesse Walker; that Alcey's son Jesse was very light in color, and that Alcey herself was very light in color, and that Jesse Walker's mother was a very dark woman; that appellant only had two brothers, Dick and Bill.

Amanda Higgins, colored, states that she was raised in Letcher County, and was owned by a man by the name of Frances and then by a man named Stamper. She knew Taller Dick Combs, Jesse Combs and the other Combs'; that their mother and Jesse Walker's mother were different women, and that her information was that Jesse Walker had a brother named Dick and a brother named Bill, who were very dark; that she was a small girl when she first got to going to John Walker's, and that she knew all these boys and had danced with them all.

Thomas Frances says that Taller Dick Combs' brother Jesse was killed in Perry County in the French and Eversole war.

John Watson states he is a son of Rolla Watson; and that after the death of Rolla Watson, some of his father's papers came into his possession, and that among them was a bill of sale for a boy named Richard, ten years of age, given by a man named Prater to his father, but that the paper was now lost; that Jesse Walker and Dick Watson resembled each other, although Dick was darker than Jesse.

R. J. Ferguson says that he knew Dick Watson and Jesse Walker, and that they resembled each other, but Dick was darker than Jesse.

Sallie Ferguson states that she is a stepdaughter of Rolla Watson, and lived in his home with him, and frequently read papers to him; that Rolla Watson, Sr., could not read writing very well, and she remembers of read-

ing to him among other things, the bill of sale, the paper which he referred to as the "deed for Dick." The paper was in the shape of a deed or something like that, and was from a man by the name of Jim Prater to Rolla Watson, and assigned to Watson a negro boy named Richard. That the negro women at Rolla Watson's called Dick Watson, Dick Walker; that the negro woman Lou told her that Dick said that if he knew his brother Jesse only had two children, he would go and get him to live with him, and that Lou told him that Mr. Watson did not want a colored family there.

Nancy Watson states that she is the wife of Rolla Watson, Jr., the son of Rolla Watson, Sr., and lived in the house with Rolla Watson, Sr.; that Rolla Watson, Sr., told her that he got Dick from a man named Prater; that they first called him Walker and afterwards Watson and that Rolla Watson, Sr.. told her that his name was Walker.

Reuben Ison states that he knew Dick Watson in Elliott County, and lived near him and saw him every week for about fourteen years. That Dick told him his name was Walker, and that they brought him to Fred Moore's place and he stayed there two or three weeks; that witness was present when one of the Wallace negroes claimed to be Dick Watson's brother, and that Dick told him that he had a brother, but that he was not the man.

R. Tipton states that he is a minister of the gospel, and has been acquainted with Jesse Walker for thirty-three years, and that he knew Rolla Watson of Elliott County, and saw a negro man at his home, and that the man he saw at Rolla Watson's was very much like appellant in stature and appearance, and that their disposition and temperament as to truthfulness, trustworthiness and honesty were about the same, but that Dick Watson was darker in color than Jesse Walker.

E. L. Hicks states that he knew Jesse Walker, Sr., and Eliza Walker, and that they were the parents of Dick and Jesse Walker; that he played with Dick when they were boys, and that Dick was sold and taken away when he was young; that he afterwards met Dick in Elliott County and renewed their acquaintance, and that Dick referred to circumstances which happened in their boyhood, and also told him that he had learned that his brother Jess lived near Morehead or Soldier, and that when he saw him (Jesse) to tell him where he (Dick) was, and that he wanted to see him.

It appears that the characters of Ison and Hicks have been more or less successfully attacked in this record; but it is fair to state that all of the material statements in Ison's testimony are substantially corroborated by other witnesses, and many of the statements in Hicks' testimony.

The above was in substance all the evidence introduced by appellant to establish the identity of Richard Watson and the relationship between them.

As opposed to this, James Combs of color, was introduced, who stated that he was fifty-seven years of age in 1910, and that Jesse Walker was his father, and Alcey Combs was his mother; that Jesse Walker belonged to John Walker, who lived on Troublesome Creek; that Alcey was Jesse Walker's first wife, and that they had four boys and one girl, and that all of Alcey's children went by the name of Combs because she was owned by a man named Jerry Combs; that their names were James, William, Jesse, Ison, and that Ison was called Dick for short; that Dick went by the name of Taller Dick Combs, and was large and very light in color, and had been dead about two years, and was close to fifty years old when he died; that after his mother Alcey died, Jesse Combs, his father, married a woman by the name of Eliza Combs, who was bought by John Walker from a man by the name of Combs just previous to their marriage; that Jesse and Eliza had two boys, Jesse and Will, and that Jesse lived in Rowan or Carter County, and Will lives in Leslie County; that his father also had another son by his last wife named John Willie Walker, who lives in Tennessee.

Jack Combs, of color, states that he was sixty-three years of age in 1910; that he knew John Walker, who lived on Troublesome Creek; that he was the owner of a colored man by the name of Jesse Walker, and that Jesse had a son named Jesse Walker about his own age, who was given by John Walker to his son Aleck Walker, who moved to Carter or Rowan County a while before the Civil War; that Jesse Walker, Sr., married Alcey Combs, and they had six children, but one died young; that James Combs and Taller Dick Combs were Jesse Walker's sons by his first wife Alcey Combs; that Jesse Walker Sr., married a colored woman by the name of Eliza, and they had some children that went by the name of Walker, being two sons named Jesse and Will; that Jesse Walker, Sr., had no son named Dick other than Taller Dick

Combs; that Taller Dick Combs was a man of large build and weighed about two hundred pounds, and was very light in color.

William Combs, of color, states that he was seventy-two years of age in 1910 and that he knew John Walker, who lived on Troublesome Creek, well; that he owned a negro man by the name of Jesse Walker, Sr., and he had a son, who was about the age of the witness or hardly so old, who was taken to Rowan or Carter County by Aleck Walker, son of John Walker; that Jesse Walker, Sr., married Alcey Combs, and they had six children, one of whom died when she was young; that Jesse Walker, Sr., also had children by his wife Eliza, and they always went by the name of Walker, being two sons, Jesse and Will; that Jesse Walker, Sr., never had any son named Dick except Taller Dick Combs.

For some reason which does not appear, the three last named witnesses were not cross-examined.

Three old residents of Elliott County, Lester, Hutchinson and Mason, aged from seventy to seventy-eight years, testified in substance, that they remembered when Dick was brought to Elliott County by Rolla Watson; that it was their understanding that he was brought there in 1848 or 1849 from Fred Moore's place, or that Fred Moore in some way was connected with the bringing of Dick to Elliott County by Rolla Watson, and that Dick was at that time from seven to ten years of age, and a black negro with no indication of being of mixed blood.

It appears that Col. Frederick Moore was a resident of Virginia, now West Virginia, immediately across the Big Sandy River from Louisa in Lawrence County, in this State, and that he had property on both sides of the river.

Let us first analyze the testimony of the three Combs negroes and see what value it has in determining whether there was a Dick Walker, and if so, whether he was a brother of the appellant.

James Combs, colored, states that he was fifty-seven years of age in 1910, and must therefore have been born in 1853, five years after the boy Dick is said to have been sold at John Walker's sale of slaves on Troublesome Creek; this effectually disposes of his testimony.

Jack Combs, colored, states that he was sixty-three years of age in 1910, and was therefore born in 1847, and was consequently a suckling infant in 1848 when

Dick Walker is said to have been sold from the farm of John Walker, and this would seem to destroy the value of his testimony as to whether there was such a boy as Dick Walker, and as to who his father and mother were, unless indeed he was a marvelously precocious infant.

Wm. Combs, colored, seventy-two years of age in 1910, and consequently was born in 1838, states that Jesse Walker, Sr., had no son named Dick by Eliza; but it does not appear where this witness was born and raised and what opportunity he had in his youth to know whether there was such a boy as Dick Walker born to Jesse and Eliza.

So we have the statement of appellant and two other witnesses that he was the full brother of Dick Watson, and that Jesse Walker, Sr., and Eliza were their parents; we have the statement of Dick himself made to numerous persons that his name was Walker, and that the name of his former owner was Walker; we have the statement from members of Rolla Watson's family that Dick was first called Walker when he was brought there, and that Rolla Watson said his name was Walker when he bought him; we have the statement of appellant's mother made to him a few years before this suit was brought, that her son Dick was sold in 1848 to a man named Fred Moore or Bob Bates and taken to Virginia; we have the fact that Frederick Moore owned a farm in Virginia; we have the fact that Dick said to several persons that he stayed a short time at the farm of Frederick Moore and was then brought to Elliott County; we have the statement from one of the witnesses that Dick had heard of his brother Jesse, recognized him as his brother, and sent messages to him; we have the statement of a member of Rolla Watson's family that one of the negroes had said that Dick had told her, if he thought his brother Jesse did not have more than two children, he would send for him to come and live with him; we have abundance of evidence that Dick and appellant were very much alike in appearance as well as characteristics and disposition; we have the evidence of three old men of Elliott County that Dick was brought there by Rolla Watson in 1848, which corresponds perfectly with the statement of other witnesses that he was sold in 1848 and taken to Virginia where he stayed a short time before being brought to Elliott County; and opposed to all this is only the bare statement of one witness, William Combs, col-

ored, who states that Jesse Walker and Eliza had no son named Dick; and this witness was not cross-examined, and failed to disclose in his deposition his opportunities for knowing in his youth about the family of Jesse Walker, Jr.

When we take into the estimate the well known difficulty of producing evidence of relationship among negroes during the time of slavery; the immoral habits that obtained among them in their sexual relations, and the great lapse of time—more than sixty years—it is surprising that appellant has been able to produce such satisfactory evidence. Under the circumstances of this case and considering the great difficulty in tracing relationship under such conditions, and the long lapse of time, the strict rules of evidence must, in a large measure, be relaxed, and we have therefore considered in this case some evidence, which under different conditions would be entitled to little weight.

Upon the whole case, we have determined after careful scrutiny and analysis of the evidence, that the appellant has established the relationship between himself and Dick Watson or Walker as claimed in his pleadings, and the judgment is therefore reversed with instructions to so adjudge. But we are not satisfied from the record that appellant is the only heir at law of Richard Watson or Walker, and before there is a final disposition of the case, the other heirs at law, if any, will be brought before the Court.